SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (State Bar #332200)
1801 Century Park E #860
Los Angeles, CA 90067
Telephone: (310) 579-0600
Kstoops@sommerspc.com

Alana A. Karbal (*pro hac vice forthcoming*)
One Towne Square
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (249) 746-4001
Akarbal@sommerspc.com

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CAITLYNNE MONEGAN, individually, and on behalf of others similarly situated,<br><br>                Plaintiff,<br><br>        vs.<br><br>DECKERS CONSUMER DIRECT CORPORATION, a corporation,<br><br>                Defendant. | Case No.: (Insert Case Number)<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Name of Judicial Officer:<br>Courtroom Number:<br>Date & Time of Hearing: |

Plaintiff, Caitlynne Monegan ("Plaintiff"), hereby brings this Collective and

Class Action Complaint against Defendant Deckers Consumer Direct Corporation

1

Class and Collective Action Complaint

("Defendant"), and states as follows:

## **INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq.*, and Colorado's "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.* ("Colorado Wage Acts"), and common law.

2.     Defendant holds itself out to be a "global organization" that "design[s], market[s], and distribute[s] footwear, apparel, and accessories developed for both everyday casual lifestyle uses and high-performance activities. [Defendant's] portfolio of brands includes UGG®, Koolaburra®, HOKA®, Teva® and Sanuk®."[1]

3.     In providing the above-described services, Defendant employed hourly employees who worked in Defendant's brick-and-mortar call centers and in remote call center settings across the United States. Defendant used a number of titles (including, but not limited to, Customer Care Specialist, Customer Care Representative I, Customer Care Representative II, and Supervisor) to refer to its

---

[1] https://www.linkedin.com/company/deckers-brands/ (last visited Mar. 8, 2024)

Class and Collective Action Complaint

hourly employees who field over-the-phone and digital customer queries (collectively referred to herein as "Hourly Employees").

4.     Defendant classified its Hourly Employees as non-exempt and tasked them with the primary job duty of providing customer service to customers of Defendant's portfolio of brands.

5.     Defendant employed Plaintiff as an Hourly Employee.

6.     The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Hourly Employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

8.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent

---

[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Mar. 8, 2024).

Class and Collective Action Complaint

in pre-shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant violated the FLSA and common law by systematically failing to compensate its Hourly Employees for work tasks completed before and after their scheduled shifts, when they were not logged into Defendant's timekeeping system, which resulted in Hourly Employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10. More specifically, Defendant failed to compensate Hourly Employees for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system each shift, and performing work, such as answering and/or preparing/sending out weekly goal/KPI emails, after they clocked out at the end of at least one of their scheduled shifts each workweek.

11. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which she may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

Class and Collective Action Complaint

12.    At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.    Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of California, employs individuals

Class and Collective Action Complaint

within the state of California, is registered with the California Secretary of State, and maintains its principal place of business in the state of California.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs CSRs in this District, conducts business in this District, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this District.

## INTRADISTRICT ASSIGNMENT

19.    A substantial part of the events or omissions giving rise to the claims outlined herein occurred in Santa Barbara County; therefore, this action is properly assigned to the Western Division.

## PARTIES

20.    Plaintiff Caitlynne Monegan is a resident of Centennial, Colorado and worked for Defendant as a non-exempt Hourly Employee in Defendant's brick-and-mortar call center and remotely from approximately March 2021 through January 2024. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $20.00 per hour. Plaintiff Monegan signed a consent to join this collective action, which is attached as **Exhibit A**.

21.    Additional Collective members were or are employed by Defendant as Hourly Employees during the past three (3) years and their consent forms will also be filed in this case.

Class and Collective Action Complaint

22.    Defendant is a foreign corporation (No. 5876610) headquartered in Goleta, California. Defendant maintains registered agents for service of process listed as Becky Degeorge, Koy Saechao, Nicole Stauss, Jenn Bautista, Rebecca Vang, Alex Jenkins, Wendy Harris, Melissa Dekoven, Kaci Ransom, Annette Kuhlman, Jerome Suarez, Samantha Wiltz, and Parid Kurbini, 2710 Gateway Oaks Drive, Sacramento, California 95833.

## **GENERAL ALLEGATIONS**

23.    Prior to hiring prospective Hourly Employees, Defendant provided them with a written offer setting forth the job requirements and hourly rate of pay.

24.    Defendant maintained documentation of the promised wage for each Hourly Employee including, but not limited to: offer letters, paystubs, and/or payroll records.

25.    Plaintiff received an offer to work as an Hourly Employee for Defendant, and she accepted the offer with the understanding that her base hourly rate would be paid for all hours worked. As explained herein, Defendant failed to pay Plaintiff and other Hourly Employees for all hours worked as promised.

26.    Plaintiff performed under the agreement by carrying out her job duties and responsibilities. More specifically, Plaintiff answered calls and fielded digital queries from customers of Defendant's various brands regarding their orders and handled call escalations. To provide the aforementioned customer

Class and Collective Action Complaint

service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

27.    Defendant paid its Hourly Employees at varying hourly rates.

28.    Defendant's Hourly Employees, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

29.    While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

30.    Defendant provided training to Hourly Employees, on, *inter alia*, how to carry out their day-to-day job duties; how to track their time; how to load and log into their computer programs at the beginning of the shift how to log out at the end of the shift; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its Hourly Employees was substantially, if not entirely, the same.

31.    At all relevant times, Defendant controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

32.    Defendant required Plaintiff and all other Hourly Employees to use a

Class and Collective Action Complaint

computer and a variety of integral and indispensable computer servers, programs, and applications that were necessary to the performance of their job duties.

33.    Defendant instructed Plaintiff and other similarly situated Hourly Employees to be "call ready" the moment their scheduled shift started. This required Defendant's Hourly Employees to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's Hourly Employees often experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

34.    Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which it monitored the Hourly Employees' clock-in times in relation to their start-of-shift time, as well as the time the Hourly Employees went into a "ready" status. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, Hourly Employees. This discipline included, but was not limited to, verbal and written warnings, and termination.

35.    Thus, Defendant forced its Hourly Employees to perform their boot-up and login process before the start of their shifts.

36.    All of Defendant's Hourly Employees used the same or similar

Class and Collective Action Complaint

computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the Hourly Employees' work and they could not perform their jobs without them.

37.     Similarly, Defendant's Hourly Employees, including Plaintiff, performed work off-the-clock after their scheduled shifts and after clocking out of Defendant's timekeeping system when they, for example, answered and or prepared and sent out weekly goal/KPI emails.

38.     As a result of the off-the-clock work described herein, Plaintiff and other Hourly Employees were unlawfully deprived of approximately fifteen (15) to twenty (20) minutes of compensation every shift, and up to 95 to 130 minutes of compensation every workweek.

39.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other Hourly Employees spent in connection with their off-the-clock activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Hourly Employees for the off-the-clock work they performed, thus breaching its agreements with the Hourly Employees.

40.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

Class and Collective Action Complaint

41.    Despite knowing Plaintiff and all other Hourly Employees performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Hourly Employees booted-up and logged into their computers each shift, along with their clock-in/out times in the timekeeping system.

43.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Hourly Employees experienced technical issues.

44.    Because Defendant required its Hourly Employees, including Plaintiff, to perform work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Hourly Employees spent working for Defendant. Thus, the hours reflected on the Hourly Employees' paystubs are also inaccurate representations of the hours they actually worked.

**A.  <u>Pre-Shift Off-the-Clock Work</u>**

45.    The off-the-clock pre-shift process took approximately fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift Hourly Employees were required to undertake the following essential work tasks:

Class and Collective Action Complaint

    a.  Turn on/wake up their computer;

    b.  Log into Microsoft Windows using a password;

    c.  Connect to Defendant's Virtual Private Network ("VPN") once a week using a dual-authentication process through which the Hourly Employees entered a code from their cell phone into their computer;

    d.  Open Google Chrome;

    e.  Log into Webmail (the program Defendant's Hourly Employees used to communicate with customers via email) using a username and password;

    f.  Log into Givex (Defendant's application for verifying gift certificate balances and other information) using a username and password;

    g.  Log into Salesforce (Defendant's application for verifying orders, confirming billing addresses/payment information, etc.) using a username and password;

    h.  Log into Gladly (Defendant's phone application) using a username and password;

    i.  Log into Doms (Defendant's order management system) using a username and password;

    j.  Visit the Kronos website and log into Kronos (Defendant's timekeeping system) using a username and password); and

    k.  Clock in.

46.    Defendant's Hourly Employees had to complete this process before the start of their scheduled shifts and before fielding calls/digital queries. Consequently, the Hourly Employees had to arrive to work approximately fifteen (15) to twenty (20) minutes before their scheduled shifts to complete their above-

Class and Collective Action Complaint

described start-up and log-in activities.

47.    Defendant's Hourly Employees were not compensated for all of this time because Defendant prohibited Hourly Employees from clocking into the timekeeping software until five (5) minutes before the start of their scheduled shift, and the described duties took longer than five (5) minutes to perform each day.

48.    The pre-shift off-the-clock work Hourly Employees performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as Hourly Employees.

49.    Defendant's management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

**B. Post-Shift Off-the-Clock Work**

50.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Hourly Employees were required to clock-out at the end of their scheduled shift or as soon as they were done fielding all of their "contacts" for the day and *before* answering and/or preparing and sending out weekly goal/KPI emails.

51.    This resulted Plaintiff and other Hourly Employees performing at

Class and Collective Action Complaint

least twenty (20) to thirty (30) minutes of off-the-clock work every week.

52.    The post-shift off-the-clock work Plaintiff and other Hourly Employees performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Hourly Employees' job duties and responsibilities.

53.    Defendant's management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

**C.** **The Off-the-Clock Work Results in Viable "Gap Time" Claims**

54.    "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Ferguson v. Smith*, No. 3:18-cv-00372-SB, 2023 WL 4741649, at *15-16 (D. Or. July 25, 2023); *Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

55.    Plaintiff, and all similarly situated Hourly Employees, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

56.    During the weeks that Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with its Hourly Employees.

## D. **Plaintiff's Exemplary Workweek**

57.    The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of instances where Defendant failed to pay Plaintiff Monegan regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies the following workweeks:

<u>January 1 – 14, 2024 Pay Period</u>

- Plaintiff worked less than 40 hours in one or more workweeks at a rate of $20.00 per hour and upon information and belief was paid $20.00 for each regular hour worked.

- With pre- and post-shift off-the-clock work, and for each workweek within the pay period, Plaintiff should have been paid an additional 95 to 130 minutes or more at her regular rate of $20.00 for each regular hour.

**Ex. B,** Monegan January 1 – 14, 2024 Pay Statement.

<u>December 4 – 17, 2023 Pay Period</u>

- Plaintiff worked more than 40 hours in one or more workweeks at an overtime rate of $30.00 per hour and upon information and belief was paid $30.00 per hour in overtime.

- With pre- and post-shift off-the-clock work, and for each workweek

15

Class and Collective Action Complaint

within the pay period, Plaintiff should have been paid an additional 95 to 130 minutes or more at her overtime rate of $30.00 for each hour worked in excess of forty (40) in the overtime workweek.

**Ex. C,** Monegan December 4 – 17, 2023 Pay Statement.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

58.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> ***All current and former hourly call center employees who worked for Defendant at any time during the past three years and required the use of a computer and programs and applications in order to perform their job duties.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

59.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

60.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

61.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

16

Class and Collective Action Complaint

62.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

63.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

64.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice included, but was not limited to:

      a.    Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members for all regular hours they worked off-the-clock in non-overtime workweeks;

      b.    Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

      c.    Willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective members, worked for the benefit of Defendant.

65.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

66.    A collective action under the FLSA is appropriate because the

Class and Collective Action Complaint

employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

67.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work without compensation due to uncompensated boot-up and shut-down time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

68.    Plaintiff estimates the FLSA Collective, including both current and former Hourly Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

69.    The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a

notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 COLORADO STATE LAW CLASS ACTION ALLEGATIONS

70.   Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former hourly call center employees who worked for Defendant in Colorado during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Colorado Class"). Plaintiff reserves the right to amend this definition if necessary.

71.   The members of the Rule 23 Colorado Class are so numerous that joinder of all Rule 23 Colorado Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Colorado Class members. Rule 23 Colorado Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

72.   There is a well-defined community of interests among Rule 23 Colorado Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23

Class and Collective Action Complaint

Colorado Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether Rule 23 Colorado Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable;

    b. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Colorado Class member minimum wage for each non-overtime hour worked;

    c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Colorado Class member overtime compensation for each overtime hour worked;

    d. Whether Rule 23 Colorado Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof; and

    e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the Colorado Wage Acts.

73.    Plaintiff's claims are typical of those of the Rule 23 Colorado Class in that she and all other Rule 23 Colorado Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Colorado Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Colorado Class members.

74.    Plaintiff will fully and adequately protect the interests of the Rule 23

Class and Collective Action Complaint

Colorado Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Colorado Class.

75.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Colorado Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

76.     This case will be manageable as a Rule 23 class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

77.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

78.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Colorado Class, and because declaratory relief is

Class and Collective Action Complaint

appropriate in this case with respect to the Rule 23 Colorado Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## **RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS**

79.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly call center employees who worked for Defendant during the applicable statutory period and required the use of a computer and programs and applications in order to perform their job duties.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

80.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds (if not thousands) of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

81.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23

22

Class and Collective Action Complaint

Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b.  Whether the post-shift time Rule 23 Nationwide Class members spent answering and/or preparing/sending out weekly goal/KPI emails is compensable time under applicable law;

    c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    d.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant

82.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

83.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests

Class and Collective Action Complaint

of the Rule 23 Nationwide Class.

84. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

85. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

86. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

87. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

Class and Collective Action Complaint

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME**

88.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

89.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

90.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

91.    At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

92.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

94.    Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

95.    The FLSA requires an employer to pay employees for all hours

25

Class and Collective Action Complaint

worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

96.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

97.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

98.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

99.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the

Class and Collective Action Complaint

federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

100.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

101.    At all times relevant to this action, Defendant failed to maintain true and accurate time records of all hours worked by Plaintiff and the FLSA Collective members.

102.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

103.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

Class and Collective Action Complaint

### COUNT II
### RULE 23 COLORADO CLASS ACTION VIOLATIONS OF THE COLORADO MINIMUM WAGES OF WORKERS ACT, COL. REV. STAT. §§ 8-6-101, *et seq.*; COLORADO MINIMUM WAGE ORDER 31, 7 CCR 1103-1 ("COLORADO WAGE ACTS")

104.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

105.    Pursuant to Colorado's "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.*, the Director of the Colorado Division of Labor is authorized to issue orders establishing minimum wages for Colorado employees. C.R.S. § 8-6-107.

106.    Pursuant to Colorado Minimum Wage Order Number 31, employers must pay their employees minimum wages "for all hours worked," 7 CCR 1103-1(3), as well as time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday; or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages.

107.    A Colorado employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for a lesser wage. C.R.S. § 8-6-118.

108.    The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*. provides: "[a]ll wages or compensation, other than those mentioned in section 8-4-109,

Class and Collective Action Complaint

earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer….' C.R.S. § 8-4-103(1)(a).

109.    An employee whose wages have not been paid as required by the Colorado Wage Claim Act may bring a civil action to recover his or her unpaid wages, plus reasonable attorneys' fees and costs. C.R.S. § 8-4-110.

110.    At all times relevant to the action, Defendant was an employer covered by the overtime and wage mandates of the Colorado Minimum Wages of Workers Act, Col. Rev. Stat. §§ 8-6-101, *et seq.*, and Colorado Minimum Wage Order 31, 7 CCR 1103-1 (collectively referred to as the "Colorado Wage Acts") and the Rule 23 Colorado Class are and/or were employees entitled to the Colorado Wage Acts' protections.

111.    The Colorado Wage Acts entitle employees to compensation for every hour worked in a workweek.

112.    Pursuant to C.R.S. § 8–4–109, an employer who fails to promptly tender unpaid wages to a terminated employee "shall be liable to the employee for the wages or compensation, and a penalty of ... [o]ne hundred twenty-five percent of that amount of such wages or compensation up to and including seven thousand five hundred dollars; and ... [f]ifty percent of that amount of such wages or

Class and Collective Action Complaint

compensation that exceed seven thousand five hundred dollars." C.R.S. § 8–4–109(3)(b).

113.    Additionally, "[i]f the employee can show that the employer's failure to pay is willful, the penalty required under paragraph (b) of this subsection (3) shall increase by fifty percent." C.R.S. § 8–4–109(3)(c).

114.    Defendant violated the Colorado Wage Acts by regularly and repeatedly failing to compensate the Rule 23 Colorado Class for the time spent on the work activities described in this Complaint.

115.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

116.    As a result, the Rule 23 Colorado Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Colorado Class is entitled to recover unpaid wages owed, interest, plus costs and attorneys' fees, interest, and other appropriate relief under the Colorado Wage Acts at an amount to be proven at trial.

### COUNT III
### RULE 23 NATIONWIDE CLASS ACTION
### BREACH OF CONTRACT

117.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

118.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay

Class and Collective Action Complaint

each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

119. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

120. For example, Defendant offered to compensate Plaintiff at a minimum hourly rate, most recently $20.00 per hour, if she agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed her duties as Hourly Employees in reliance on the offer.

121. Defendant breached its contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

122. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $20.00 per hour within the applicable period.

123. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer

Class and Collective Action Complaint

letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

124. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for all the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

125. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

126. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

127. Defendant also breached its duties of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's

Class and Collective Action Complaint

job."

128.   As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

129.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

130.   This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

131.   At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

132.   Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

133.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

134.   Plaintiff and the Rule 23 Nationwide Class members performed off-

Class and Collective Action Complaint

the-clock work tasks at the request of and without objection by Defendant.

135.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

136.    Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

137.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

138.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

139.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

140.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

Class and Collective Action Complaint

# **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An Order certifying this action as a class action (for the Rule 23 Colorado Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's state law claims under the Colorado Wage Claim Act and Colorado's "Minimum Wage Act" (Count II);

c. An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

d. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e. An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Colorado Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

f. An Order declaring Defendant violated the FLSA;

g. An Order declaring Defendant's violations of the FLSA were willful;

h. An Order declaring Defendant violated Colorado wage-and-hour laws;

i. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay

Class and Collective Action Complaint

them for mandatory pre- and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

j. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Colorado Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

k. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

l. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. An Order awarding such other and further relief as this Court deems appropriate.

Dated: March 25, 2024                    Respectfully Submitted,

                                         */s/ Kevin J. Stoops*
                                         Kevin J. Stoops (State Bar #332200)
                                         Alana A. Karbal (*pro hac vice forthcoming*)
                                         SOMMERS SCHWARTZ, P.C.
                                         One Towne Square
                                         Southfield, MI 48076
                                         Telephone: (248) 355-0300
                                         Facsimile: (249) 746-4001
                                         Kstoops@sommerspc.com
                                         Akarbal@sommerspc.com

                                         *Attorneys for Plaintiff and the Putative Collective/Class Members*

Class and Collective Action Complaint

# JURY DEMAND

Plaintiff Caitlynne Monegan, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: March 25, 2024                    Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (State Bar #332200)
Alana A. Karbal (*pro hac vice forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (249) 746-4001
Kstoops@sommerspc.com
Akarbal@sommerspc.com

*Attorneys for Plaintiff and the Putative Collective/Class Members*

# CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the EFC system, which will send notification of such filing to all counsel of record.

*/s/ Kevin J. Stoops*
Kevin J. Stoops

Class and Collective Action Complaint